IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CINDY P.,[1] | ) |
|         Plaintiff, | ) |
| v. | ) No. 20 C 6708 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | ) Magistrate Judge ) Maria Valdez |
|         Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Cindy P.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 24] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On December 20, 2016, Plaintiff filed a claim for DIB, alleging disability since March 15, 2015. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 14, 2019. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A medical expert ("ME") and a vocational expert ("VE") also testified.

On October 17, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 15, 2015. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the cervical, lumbar, and thoracic spine. The ALJ

concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: can stand and walk for no more than an hour at a time; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl, but never climb ladders, ropes, or scaffolds; can frequently handle, finger, feel, and reach overhead; and must avoid all exposure to use of dangerous moving machinery and unprotected heights. At step four, the ALJ concluded that Plaintiff is capable of performing her past relevant work as an administrative clerk, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former

3

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and

4

means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately

5

articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erred in determining that Plaintiff's anxiety and depression were non-severe impairments; (2) the ALJ erred by failing to include any non-exertional limitations in the RFC assessment; and (3) the ALJ failed to properly accommodate Plaintiff's upper-extremity limitations. Each argument will be addressed below in turn.

#### A. <u>Mental Impairments and Non-Exertional Limitations</u>

Plaintiff's first and second arguments are related. For her first argument, Plaintiff broadly argues that the ALJ erred in determining that Plaintiff's anxiety and depression do not amount to severe impairments. However, as stated above, the ALJ did find that Plaintiff had other severe impairments – namely, degenerative disc disease of the cervical, lumbar, and thoracic spine. This is important, because "[d]eciding whether impairments are severe at Step 2 is a threshold issue only; an

ALJ must continue on to the remaining steps of the evaluation process as long as there exists even *one* severe impairment." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (emphasis in original, citation omitted). Accordingly, "any error at Step Two is harmless if the ALJ finds a claimant has *any* severe impairments and goes on to sufficiently address the aggregate effect of all the claimant's severe and non-severe impairments later in his analysis." *Dorothy B. v. Berryhill*, No. 18 CV 50017, 2019 U.S. Dist. LEXIS 91276, at *5 (N.D. Ill. May 31, 2019) (emphasis in original, citations omitted). Here, despite not finding them to be severe impairments, the ALJ's analysis did fulsomely address Plaintiff's alleged mental impairments, as elaborated upon below.

Plaintiff specifically takes issue with the ALJ's assessment of (1) Plaintiff's ability to concentrate, persist, or maintain pace, and (2) Plaintiff's ability to interact with others. On the topic of mental health more broadly, in finding Plaintiff's anxiety and depression to be non-severe, the ALJ first noted that Plaintiff had "not alleged any mental health issues in her disability application" and "has not been treated by any mental health professionals." (R. 32.) The ALJ further noted that Plaintiff "did not stop working due to mental health issues or symptoms that prevented her from doing her job." (*Id.* at 33.) With respect to concentration, persistence, or pace in particular, the ALJ reasoned as follows:

> Although claimant alleges difficulty focusing, paying attention and completing tasks, claimant's treaters have not reported any difficulties in claimant's ability to concentrate. She was noted to experience no confusion due to medications. Additionally, the record fails to mention distractibility and at the consultative examination, claimant did not mention difficulties with concentration. Rather, she described

7

> symptoms of poor sleep and appetite, crying episodes, decreased self-care and isolative behavior; mental status examination did not identify significant issues in this domain. Considering all of the evidence, claimant experiences no more than mild difficulties in this domain due to mental illness.

(*Id.* (citations omitted).)

So, the ALJ found only mild limitations with respect to concentration because there was an absence of medical or other record evidence supporting greater limitations and because Plaintiff's consultative examination did not reveal any issues in this functional area. Given these explicit rationales, the Court finds that the ALJ's determination as to concentration, persistence, or pace was adequately supported and the ALJ provided the requisite logical bridge to support her conclusion. *See Meghan S. v. Kijakazi*, No. 20 C 1592, 2021 U.S. Dist. LEXIS 172594, at *17 (N.D. Ill. Sep. 13, 2021) ("Although [the claimant] disagrees with the ALJ's interpretation of the CPP evidence, the ALJ's interpretation was not unreasonable and she did not fail to consider any relevant line of evidence. Where reasonable minds could differ, the Court must defer to the ALJ's conclusion. The ALJ's finding that [the claimant] is no more than moderately limited in concentrating, persisting, or maintaining pace is thus supported by substantial evidence.") (citation omitted).

As to interacting with others, the ALJ reasoned as follows in finding no limitation:

> Here, claimant has not identified issues in getting along with others or with authority figures. Although she contends she has difficulty engaging in social activities, this is primarily due to her physical health issues. She testified that she is able to go grocery shopping by herself twice a week without difficulty. Finally, the medical evidence shows

8

>claimant had a good rapport with providers and was described as pleasant and cooperative at her consultative examination. There is no persuasive evidence to support any limitation in this domain due to claimant's mental health condition.

(R. 33 (citations omitted).) So, the ALJ found no limitations in interacting with others because some of Plaintiff's daily activities suggested no impairments and Plaintiff's behavior at the consultative examination belied any issues with human interaction. In light of the ALJ's specific reasoning underlying her conclusion, the Court finds that the ALJ built the requisite logical bridge between the evidence and her determination with respect to interacting with others. *See Rick M. v. Saul*, No. 20 CV 4369, 2021 U.S. Dist. LEXIS 118024, at *15-16 (N.D. Ill. June 24, 2021 ("[T]he ALJ offered specific reasons – contrary evidence – that explain why plaintiff's medical record did not support incorporating any mental limitations in the RFC. That was enough to build the necessary 'accurate and logical bridge' between the minimal evidence of mental impairment in this case and the conclusion that Rick M.'s RFC does not include mental limitations.") (citations omitted).

Plaintiff argues that the ALJ's RFC determination is deficient because she "neglected to accommodate a single non-exertional limitation in the RFC assessment." (Pl.'s Memo. at 11.) However, as argued by Defendant, courts will affirm an ALJ's decision not to accommodate mild mental limitations in the residual functional capacity where the court can sufficiently trace the ALJ's reasoning for declining to include such limitations. *See Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *3 (N.D. Ill. June 1, 2021). ("When reading the ALJ's decision as a whole, the extensive discussion at step two of Plaintiff's mental health treatment

9

records as well as her functional abilities is sufficient to trace the ALJ's reasoning for declining to include mental limitations in the RFC finding.") (citations omitted). Here, the Court can sufficiently trace the ALJ's reasoning as to why no non-exertional limitations were included in the RFC. While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence. The Court declines that invitation concerning Plaintiff's mental impairments, because reweighing the evidence is forbidden. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.") (citations omitted).

Finally, Plaintiff argues is passing that "it was incumbent upon [the ALJ] to seek further information regarding the effects of Plaintiff's non-exertional deficits on her physical functioning." (Pl.'s Memo. at 13.) As an initial matter, the Court need not consider Plaintiff's argument in that regard as it is wholly undeveloped. *See Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived.") (citation omitted). Moreover, an ALJ is not mandated "to order additional testing based simply on the inconclusive nature of certain evidence." *Evans v. Bowen*, 675 F. Supp. 1117, 1127 (N.D. Ill. 1987). "Rather an ALJ is compelled to order additional examinations when, without such evidence, the ALJ

cannot make an 'informed choice.'" *Id.* (citations omitted). Here, the ALJ reasonably concluded that Plaintiff's mental impairments did not warrant inclusion in the RFC. Furthermore, to the extent Plaintiff asserts additional testing should have been conducted, it was her burden to supply records supporting her impairments. *See Jones v. Berryhill*, No. 16 C 9113, 2018 U.S. Dist. LEXIS 85135, at *13 (N.D. Ill. May 22, 2018) ("Nor was there a need for the ALJ to order additional testing, particularly because [i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.") (citation and internal quotations omitted). Accordingly, the Court rejects Plaintiff's last argument.

### B. Upper-Extremity Limitations

Plaintiff argues that the ALJ improperly discounted the opinions of her treating primary care physician, Dr. Debora Grandinetti. Under the "treating physician rule,"[3] an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299,

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed on December 20, 2016, and, therefore, the ALJ was required to apply the former treating physician rule.

11

306 (7th Cir. 2010) (internal quotations omitted); *see also Adrian Z. v. Berryhill*, No. 17-cv-4585, 2019 U.S. Dist. LEXIS 129383, at *4 (N.D. Ill. Aug. 2, 2019) ("When an ALJ declines to give controlling weight to a treating physician's opinion, he must provide a sound explanation for the rejection.") (citation omitted). Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308.

In her decision, the ALJ noted Dr. Grandinetti's opinions, including her opinions that Plaintiff was limited to lifting five pounds; has significant limitations with sitting, standing, and walking; will need unscheduled breaks every hour of at least twenty minutes; would be off-task more than 30% of the workday; would be absent more than five days a month; and can only reach, handle, and finger for 10% of the workday. (R. 38.) In giving Dr. Grandinetti's opinions limited weight, the ALJ reasoned as follows:

> Based on the evidence, I give this opinion little to no weight, as such extreme limitations are inconsistent with and unsupported by the medical evidence of record. As [the medical expert] explained, there is no objective support for finding that claimant is limited to 10% use of her hands, when her strength is most often normal at 5/5, with a few 4/5 – almost normal – findings. Claimant's normal, intact sensation and normal range of motion do not support these extreme limitations. Further, throughout her treatment records, Dr. Grandinetti treated claimant for herniated discs, which is not supported by the evidence or imaging. Accordingly, this opinion appears grounded in a misapprehension of the severity of claimant's condition.

(*Id.* (citations omitted).)

This quoted passage reveals that the ALJ offered the requisite sound explanation for discounting Dr. Grandinetti's opinions, per her explicit reasoning that there was a lack of supporting medical evidence, contrary medical evidence,

12

and an inconsistency with the medical expert's testimony.[4] Further, the ALJ was entitled to discount Dr. Grandinetti's opinions as extreme. Indeed, other courts in this district have criticized similarly-extreme opinions in other cases as "so inherently unbelievable" that "the court cannot take . . . [the] doctor's opinion seriously, let alone begin to question the ALJ's rejection of them." *Thelmarae W. v. Saul*, 476 F. Supp. 3d 717, 728-29 (N.D. Ill. 2020). Ultimately. the Court concludes that the ALJ gave sufficiently good reasons for discounting Dr. Grandinetti's opinions and finds that substantial evidence supports the ALJ's decision not to give the opinions controlling weight. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, . . . or when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (citations omitted).

Lastly, Plaintiff argues that the ALJ improperly discounted her allegations regarding her reported upper-extremity limitations. Pertinent to Plaintiff's alleged symptoms in that area, the ALJ noted Plaintiff's claims that she has lifting

---

[4] It is worth noting generally that the ALJ gave significant weight to the opinions of the impartial medical expert. The medical expert "explained that there was no evidence of disc herniation in the imaging, although [Plaintiff's] doctors were treating [her] for that." (R. 38.) The medical expert further indicated that "there was no nerve encroachment and only arthritic-type changes in the spine." (*Id*.) Plaintiff asserts that the medical expert's hearing testimony as to Plaintiff's upper-extremity limitations in particular was equivocal. But, as Defendant points out, Plaintiff did not object to the ALJ's questioning of the medical expert at the hearing. Furthermore, Plaintiff had the opportunity to and did cross-examine the medical expert.

13

restrictions, constantly drops things, and has trouble with cooking, cleaning, and dressing herself. (R. 35.) However, the ALJ founds Plaintiff's statements to be inconsistent with the medical evidence and other evidence of record. (*Id.* at 35.) As to the conflicting medical evidence, the ALJ noted that at examinations Plaintiff generally "showed overall full strength of 5/5 in both the upper and lower extremities" and "examinations also showed claimant with normal range of motion." (*Id.* at 36.) The ALJ also noted the ME's opinion that Plaintiff "can frequently use her arms to reach above her shoulders, and has no limitations in handling, fingering, and feeling." (*Id.* at 38.)

    This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court finds that, per the ALJ's explanation and support outlined above, the ALJ reasonably determined that Plaintiff's subjective symptoms concerning her upper extremities were not fully corroborated. *See Atkins v. Saul*, 814 F. App'x 150, 155 (7th Cir. 2020) ("Here, the ALJ otherwise explained his conclusion adequately. He explained that the objective medical evidence and Atkins's daily activities did not corroborate his subjective symptoms.") (citations and internal quotations omitted); *Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022) ("Substantial evidence supports the ALJ's determination that Prill's account

14

of her subjective symptoms was not consistent with her medical records."); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Ultimately, Plaintiff has not shown that the ALJ's evaluation of her alleged symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018). Accordingly, the Court finds Plaintiff's final argument unavailing.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 24] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:** **July 18, 2022**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**